UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Lester Torres,

      Plaintiff,

      v.                                        Civil Action No. 5:12-CV-63

Al Cormier, Fred Gorham,
Officer Dingham, and Officer Forrtier,

      Defendants.

## REPORT AND RECOMMENDATION
(Doc. 10)

      Plaintiff Lester Torres, a Vermont inmate, brings this action *pro se* under 42 U.S.C. § 1983 claiming that Defendants violated his constitutional rights. Specifically, Plaintiff contends that, on December 25, 2011, after the toilet in his cell overflowed, insufficient steps were taken to clean and sanitize the cell, and, thereafter, he had to remain in the unsanitary cell to eat Christmas dinner. He brings his claim under the Due Process Clause of the Fifth and Fourteenth Amendments, as well as the Eighth Amendment's prohibition on cruel and unusual punishment. Defendants, various officials at the correctional facility, move to dismiss under Fed. R. Civ. P. 12(b)(6) for four reasons: (1) the claims against Defendants in their official capacity are barred by the Eleventh Amendment; (2) Plaintiff has failed to exhaust his administrative remedies; (3) Plaintiff has failed to allege personal involvement on the parts of Defendants Cormier, Gorham, and Dingham; and (4) Plaintiff has failed to state a valid claim under the Eighth

Amendment. (Doc. 10.) Plaintiff has not filed a response to the pending motion to dismiss.

For the reasons that follow, I recommend that the motion to dismiss be GRANTED and that this case be DISMISSED with leave to amend.

## Factual and Procedural Background

For purposes of the motion to dismiss, all facts alleged in the Complaint (Doc. 5) will be accepted as true. On December 25, 2011, Plaintiff's cell at the Northeast Regional Correctional Facility, a state prison run by the Vermont Department of Corrections where he was incarcerated, flooded due to an overflow of his toilet. (*Id*. at 4.) Plaintiff stood on a chair to avoid contact with the "feces and urine" that had fallen onto the floor, (*id*.) but when Officer Forrtier offered him a plastic bag to cover his feet, Plaintiff had no choice but to walk in the waste to retrieve the bag. (*Id*. at 4-5.) Plaintiff mopped up the mess, and was also "forced to clean [the cell] and sanitize" it without boots, gloves, or other "hazmat gear." (*Id*. at 5.) Thereafter, Plaintiff was unable to spend time with his family for Christmas dinner, because he was forced to eat the meal in the dirty cell, which still smelled of sewage. (*Id*.)

Having been granted leave to proceed *in forma pauperis* (Doc. 3), Plaintiff filed his Complaint on March 26, 2012. (Doc. 5.) In the Complaint, Plaintiff argued that the above set of facts constituted a violation of the Eighth Amendment to the United States Constitution, as well as a violation of the due process guarantees of the Fifth and Fourteenth Amendments. (*Id*. at 5.) Plaintiff seeks damages in the amount of $1,000,000. (*Id*. at 6.)

**Discussion**

I.  **Legal Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

The Court has the added obligation in this case to "construe a *pro se* complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest.'" *Berlin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). This admonition applies with particular force when a plaintiff's civil rights are at issue. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). *Pro se* litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353, 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010).

As noted above, Plaintiff has not filed a response to the motion to dismiss. Nonetheless, a plaintiff's failure to oppose a Rule 12(b)(6) motion does not by itself merit

dismissal of a complaint. *See Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010); *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *Goldberg*, 599 F.3d at 184 (citing *McCall*, 232 F.3d at 322-23).

## II. Eleventh Amendment Immunity

Defendants first argue for dismissal of all claims brought against them in their official capacities, maintaining that, to whatever extent they have been sued in such capacities (which is unclear from the face of the Complaint), they are immune from suit under the Eleventh Amendment to the United States Constitution.[1] (Doc. 10 at 3.) It is, of course, doctrinal that federal jurisdiction over suits against unconsenting states or state officials "was not contemplated by the Constitution when establishing the judicial power of the United States." *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). As a consequence, unless the state consents to suit or provides an express or statutory waiver of immunity, the Eleventh Amendment bars suit in federal court for damages against states, state agencies, and state officials acting in their official capacity. *Woods v. Rondout Valley*

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has also been interpreted to bar federal suits against state governments by a state's own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

*Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). Any waiver of Eleventh Amendment immunity by a state must be unequivocally expressed. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238 n.1 (1985).[2]

As relevant to this case, the state has not waived immunity from a § 1983 suit in federal court. Indeed, the state has expressly preserved its immunity under the Eleventh Amendment. *See* 12 V.S.A. § 5601(g). Accordingly, the damages claims against Defendants in their official capacities should be DISMISSED.

### III. Failure to Exhaust Administrative Remedies

Defendants next argue that the Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies. (Doc. 10 at 3-5.) In his Complaint, Plaintiff admits that he has not filed a grievance, as "others are pursuing this course." (Doc. 5 at 2.) Plaintiff further maintains that he declined to file a grievance because "[n]othing is usually done," (*id*. at 3) so he decided he would "go ahead and sue." (*Id*. at 2.)

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits related to "prison conditions" under the PLRA include "all inmate suits about prison life, whether they involve general

---

[2] Congress also may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976), which it has not done in any way relevant to this case. Further, the Supreme Court has recognized that Congress did not intend to abrogate sovereign immunity by the enactment of § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979).

5

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies under the PLRA requires inmates to comply with and complete the prison grievance procedures in place at the institution to which they are confined. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). As relevant to this case, I note that "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter*, 534 U.S. at 524.

The grievance process at the facility, succinctly stated, allows the inmate to file an informal grievance, followed by a formal grievance if the inmate is not satisfied, which can then be appealed to the facility superintendent. (Doc. 10-1, Murphy Aff. ¶ 3.) Ultimately, the inmate can appeal the superintendent's decision to the Commissioner of the Department of Corrections, who is the final arbiter of the inmate's grievance. (*Id*. at ¶ 4.) Thus, appeal to the Commissioner and subsequent disposition of the grievance by the Commissioner constitute exhaustion of administrative remedies in this setting.

Although the exhaustion requirement is "mandatory," *id*., the Second Circuit has recognized certain caveats that can apply in limited circumstances. "These caveats fall into three categories: when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a[] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006), citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).

6

At all times relevant to this incident, the Vermont Department of Corrections had this grievance procedure, which was thus formally "available" to Plaintiff. (Doc. 10-1, Murphy Aff. ¶ 2.) But the formal availability of a grievance procedure does not necessarily end the inquiry. *See Hemphill*, 380 F.3d at 687. Although Plaintiff admits that he did not file a grievance, (Doc. 5 at 2) he states in his Complaint that "[n]othing is usually done" in response to grievance filings, (*id*. at 3) so he decided to skip the ineffectual process and "go ahead and sue." (*Id*. at 2.) While the Second Circuit takes a functional approach to the question of the availability of grievance procedures, *see Hemphill*, 380 F.3d at 687, the test for availability remains "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available," *id*. at 688 (internal quotation marks omitted). As such, an inmate's unilateral expression of the futility of filing a grievance is insufficient to negate the PLRA's exhaustion requirement and absolve him of the failure to exhaust. *See Shariff v. Coombe*, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009) (inmate's perception of futility insufficient to excuse his failure to exhaust); *Harrison v. Goord*, No. 07 Civ. 1806, 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009) (inmates are required to exhaust their remedies "even if they believe that administrative remedies would be ineffective or futile"); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (construing PLRA, Court stated that it would not "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"). Thus, despite Plaintiff's perception that filing a grievance would have been ineffective, administrative remedies remained available to him for the

purposes of the PLRA, and he was required to exhaust those remedies before filing a claim in this Court.³

Furthermore, Plaintiff has identified no reason why Defendants should be estopped from raising his failure to exhaust as a defense, and has pointed to no special circumstances that would justify his failure to file a grievance. Accordingly, the damages claim against Defendants should be DISMISSED.

## IV. Personal Involvement

Defendants Cormier, Gorham, and Dingham – officials from the Northeast Regional Correctional Facility – next maintain that the claims against them should be dismissed for Plaintiff's failure to allege their personal involvement in the claimed constitutional violations. (Doc. 10 at 5-6.) "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). "When monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required." *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973). As it relates specifically to supervisors, mere "linkage in the prison chain of command" is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983

---

³ Similarly, Plaintiff cannot rely on the fact that another inmate has filed a grievance, which he avers in his Complaint (Doc. 5 at 2), as evidence that he has in any way initiated (let alone exhausted) the administrative grievance procedure himself. *See Shariff v. Coombe*, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009) (concluding that inmate cannot rely on grievance filed by another inmate as evidence of exhaustion).

8

claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright*, 21 F.3d at 501(noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).

Nonetheless, under certain limited circumstances, a supervisor may be held liable for unconstitutional conduct. The Second Circuit has held that

> [s]upervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez*, 341 F.3d at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

In his Complaint, Plaintiff does not claim that any of these three Defendants were either directly involved in, or even aware of, his claims. He identifies only Officer Forrtier, the fourth Defendant, in his recitation of the facts forming the basis of his complaint. (Doc. 5 at 4.) He also does not allege that a policy or custom existed sanctioning the conduct at issue. Finally, he does not claim that either Cormier, Gorham, or Dingham were made aware of the problem through a report, nor does Plaintiff allege negligent supervision or that these Defendants failed to take corrective action based on

9

information provided to them.  On this basis, I recommend that the Court GRANT the motion to dismiss all claims against Defendants Cormier, Gorham, and Dingham.

## V.     Eighth Amendment

Finally, Defendants argue that, at bottom, Plaintiff's allegations – that he was exposed to an overflowing toilet water without being permitted to sanitize his cell – fail to state a valid Eighth Amendment claim.  The Eighth Amendment's prohibition against "cruel and unusual punishments," U.S. CONST. amend. VIII, requires prison conditions to be "humane," though not necessarily "comfortable."  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), and *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  "To establish an Eighth Amendment violation, an inmate must show: '(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities[;] and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety.'"  *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (quoting *Gaston*, 249 F.3d at 164).

The objective component of this test calls for the alleged prison conditions to be "evaluated in light of contemporary standards of decency."  *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citing *Rhodes*, 452 U.S. at 346).  In making this assessment, the Second Circuit has held that "prisoners may not be deprived of their basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety – and they may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health."  *Jabbar*, 683 F.3d at 57.  As relevant to this case, "reasonably adequate sanitation

and the ability to eliminate and dispose of one's bodily wastes without unreasonably risking contamination are basic identifiable human needs of a prisoner protected by the Eighth Amendment." *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994).

The subjective component, "deliberate indifference," requires "more than mere negligence," *Farmer*, 511 U.S. at 835; "[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Jabbar*, 683 F.3d at 57. It is not enough to show that an officer should have been aware that a prisoner was in immediate danger. Rather, the evidence must allow a reasonable juror to conclude that the officer "was actually aware of that immediate danger." *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir. 2009); *see Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Plaintiff's claim fails on both fronts. As to the objective seriousness of the claimed deprivation, I note that, while chronic exposure to human waste may give rise to a colorable Eighth Amendment claim, "where exposure to such waste is intermittent or limited to a matter of hours, courts normally will not entertain such actions." *Ortiz v. Department of Corrections*, No. 08 Civ. 2195, 2011 WL 2638137, at *7 (S.D.N.Y. April 29, 2011), *adopted in full*, 2011 WL 2638140 (S.D.N.Y. July 5, 2011). For example, in *Gaston v. Coughlin*, 249 F.3d 156, 165-66 (2d Cir. 2001), the Second Circuit reinstated an inmate's Eighth Amendment claim against two prison officers where the area in front of his cell was filled with human waste for several consecutive days. But courts of this circuit have repeatedly held that, where the claimed exposure lasts only a matter of hours

rather than days, an inmate cannot make a colorable claim under the Eighth Amendment. *See Ortiz v. Department of Corrections*, 2011 WL 2638137, at *7 (collecting cases). Because Plaintiff only alleges a temporary exposure to waste, his claim is insufficiently serious to violate the Eighth Amendment.

Furthermore, Plaintiff has not sufficiently alleged "deliberate indifference" on the part of prison officials for his claim to survive the motion to dismiss. The Complaint recites the steps that prison officials took to assist him after his toilet began to overflow. When informed of the problem, officers handed him plastic bags to cover his feet, and later provided a mop with which Plaintiff could clean up the mess. (Doc. 5 at 4-5.) Although Plaintiff was never provided with boots, gloves, or other "hazmat gear" to clean the cell, "[t]here is a clear difference between cases where defendants allegedly knew about unsanitary conditions but did nothing and cases where officials actually acted to resolve or alleviate the problem, as they are alleged to have done here." *Ortiz v. Department of Corrections*, 2011 WL 2638137, at *9. Prison officials made some, admittedly imperfect, efforts to help Plaintiff clean his cell in the circumstances of this case. Such attempts are hardly indicative of indifference.

Because Plaintiff's claims do not rise to the level of unconstitutional conduct under the Eighth Amendment,[4] I recommend that claims against all Defendants be DISMISSED.

---

[4] As an inmate, Plaintiff's rights are protected under the Eighth Amendment, rather than the Fourteenth Amendment, which applies to pre-trial detainees. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). As a consequence, to whatever extent Plaintiff has brought his claim under the Due Process Clause of either the Fifth or Fourteenth Amendments (Doc. 5 at 5), he has failed to state a valid claim under those amendments as well.

12

## VI. Leave to Amend

The Second Circuit has emphasized that a district court should not dismiss a *pro se* filing "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). "[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp*, 521 F.3d 202, 216 (2d Cir. 2008). Here, given the exceedingly high bar of unsustainability the claim must clear for Plaintiff not to be given leave to amend, as well as the liberal reading due his *pro se* pleading, Plaintiff should be granted an opportunity to amend his Complaint.

If Plaintiff chooses to submit an amended filing, the filing shall be entitled "Amended Complaint" and must contain all claims against all parties, as it will supersede the original Complaint in all respects. The Court should also require that the Amended Complaint be filed within thirty days of its ruling on this Report and Recommendation. Failure to so amend should result in the dismissal of all claims with prejudice.

### Conclusion

For the reasons set forth above, I recommend that Defendants' motion to dismiss (Doc. 10) be GRANTED and the case be DISMISSED. I further recommend that, if this Report and Recommendation is adopted by the Court, Mr. Torres be allowed thirty days to file an Amended Complaint. Failure to file an Amended Complaint should result in the dismissal of the case with prejudice.

Dated at Burlington, in the District of Vermont, this 19th day of September, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).